UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CORINTHIAN LOYLESS, ) | |
| ) | |
| Plaintiff, ) | No. 1:09-CV-239 |
| ) | |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| ) | |
| VANDER OLIVEIRA d/b/a ANGELO'S ) | |
| STEAK HOUSE, et al. ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM**

Before the Court is Plaintiff Corinthian Loyless's ("Plaintiff") motion for summary judgment (Court File No. 29) and supporting memorandum (Court File No. 30). Despite the Court's frequent references to both the Local Rules for the Eastern District of Tennessee and the Federal Rules of Civil Procedure, none of the defendants responded to the motion. "Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D.TN. LR 7.2. *Overton v. Hamilton County, TN.*, 2009 WL 2601848, * 1 (E.D. Tenn. August 24, 2009). Furthermore, many of Plaintiff's allegations in both his motion for summary judgment and in the complaint were not disputed by Defendants Vander Oliveira ("Vander") or Stephen Oliveira ("Stephen") in their answers, and Defendant Jane Oliveira ("Jane") failed to respond entirely. Pursuant to Rule 8, of the Federal Rules of Civil Procedure, allegations in the complaint are "admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6).

Even absent such responses, however, Plaintiff has not met his burden of showing there is no genuine issue of a material fact on his wrongful termination and retaliation claims and accordingly, the Court will **DENY** Plaintiff's motion for summary judgment as to these claims. The

Court also finds Plaintiff fails to state a claim for relief against Defendant Stephen Oliveira and will **DENY** Plaintiff's motion on all claims against this defendant. The Court will **GRANT** Plaintiff's motion on the remaining overtime and minimum wage violation claims against Defendants Vander and Jane Oliveira (Court File No. 30).

I.  **FACTS AND PROCEDURAL BACKGROUND**

This lawsuit arises out of Plaintiff's employment with Angelo's Steakhouse ("Angelo's") from April 2007 until October 2008. Vander and Jane owned and operated Angelo's during Plaintiff's employment. Plaintiff claims Jane hired him, but Vander disputes this, stating he personally hired Plaintiff and he was the only one with authority to hire and fire (Court File No. 22, p. 2). Vander claims Jane handled the "paperwork" (*id.*). Stephen worked as a manager, however, Vander and Stephen assert Stephen's position was solely that of a bartender/server (Court File Nos. 22, p. 1; 33, p. 1; 34, p. 1). Plaintiff also claims Stephen had responsibility for the front of the restaurant as well as disciplining and firing authority (Court File No. 30-1, ¶ 3). Stephen disputes his managerial status and has submitted payroll documentation of his wages to show he was paid hourly and received tips (Court File No. 21-1). "Managers in restaurants get paid a higher wage and/or are on salary income; which [Stephen] clearly did not" (Court File No. 34).

Plaintiff was employed at all times as either a server or bartender with Angelo's. Plaintiff's wages were initially $2.13 per hour, plus tips, and in the late summer 2007, this rate increased to $3.50 per hour plus tips.[1] The minimum wage in effect when he originally began his employment

---

[1] Plaintiff's exact salary is unclear. In the Complaint (Court File No. 1 ¶ 18) indicates he was paid $3.50 per hour at all times but Plaintiff's Declaration and memorandum in support of summary judgment both describe his hourly rate as $2.13, increasing to $3.50 in the late summer of 2007

2

was $5.15 per hour, but it was increased to $5.85 per hour on July 24, 2007, and to $6.55 per hour in July 2008 (Court File No. 1, ¶ 23). *See* 29 U.S.C. § 206(a). Throughout Plaintiff's employment, Defendants failed to post the wage and hour notices required by the Fair Labor Standards Act ("FLSA") and accompanying regulations. Plaintiff would generally work approximately 45 hours per week but would not receive overtime payment for his hours above 40. Vander claims Plaintiff convinced Jane not to hire another bartender and offered to work any hours above 40 solely for tips because he needed the money (Court File No. 22, p. 1).

In June 2007, Plaintiff became the sole bartender for Angelo's and worked seven days a week. He worked from 3:00 p.m. until the restaurant closed. The restaurant generally closed around 12:00 or 1:00 a.m. during the week and 3:00 a.m. on the weekends. Sometimes he was required to work even later as he was required to clean and wait for a manager to collect his money and let him out. Plaintiff was required to arrive at the restaurant at 3:00 p.m., however, was instructed by Defendants not to clock in until 5:00 p.m. He was also instructed to clock out at closing time but the times during which he cleaned or waited for a manager to excuse him, would not be calculated in his time worked. This pattern continued until the late summer, when Plaintiff started to work only five days per week. His schedule resulted in approximately 48-54 hours per week and Defendants continued to fail to report all the hours actually worked. In addition, Plaintiff claims he was often required to pay a portion of his tips to the dishwashers, which averaged about $50 per week, but Vander states sharing tips with the dishwashers was never a policy of the restaurant (Court File No. 33, p. 1).

On or about October 3, 2008, Plaintiff was scheduled to bartend along with Stephen.

---

(Court File Nos. 30-1 ¶ 6; 30, p. 3).

3

Plaintiff objected to sharing his tips with Stephen, claiming "he had not provided enough assistance to make it equitable," but eventually agreed and split his tips evenly with Stephen. Later that evening, Vander told Plaintiff he was fired. Vander, however, describes an entirely different series of events in his answer (Court File No. 33). He claims he never fired Plaintiff, rather, he merely confronted Plaintiff about putting all of the tip money in his own pocket instead of sharing them with the other bartender, Stephen (Court File No. 33). When Plaintiff asked if he should leave, Vander stated "no" and to go ahead and finish the night, "tomorrow is another day" (*id.* at 1). Plaintiff then failed to show up for the next three days and Vander learned Plaintiff informed the customers he had quit (*id.*).

Plaintiff filed a complaint on September 9, 2009, to recover unpaid wages and overtime under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"). Plaintiff asserts FLSA violations of minimum wage, overtime, and retaliation provisions as well as claims of wrongful discharge under the common law and the Tennessee Public Protection Act. After Defendants failed to respond, the Clerk of Court entered Default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on February 5, 2010 (Court File No. 8). Plaintiff moved for default judgment and Vander and Plaintiff filed a stipulation of damages on May 19, 2010 (Court File No. 14). Vander then moved to set aside the entry of default on May 21, 2010 (Court File No. 15) and the Court granted the motion, ordering all defendants to file an answer within seven days of its order (Court File No. 26). When none of the defendants filed timely answers, Plaintiff moved for summary judgment on all claims (Court File No. 29). Defendants Vander and Stephen eventually submitted answers *pro se* after the Court granted an extension, but Jane has failed to respond or otherwise defend. As previously noted, none of the defendants responded to Plaintiff's motion for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). Finally, "[w]here the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *AT&T Corp. v. L & M Music, Inc.*, 2008 WL 4415422 at *2 (E.D. Tenn. Sept. 24, 2008).

## III. DISCUSSION

Plaintiff has asserted FLSA violation claims against all three defendants. Vander and Jane

both owned and operated Angelo's, had responsibility for the day-to-day operations, Vander admits his authority to hire and fire and notes Jane's responsibility for paperwork. Jane failed to deny any of Plaintiff's allegations, and has thus admitted them. The Court finds there is no factual dispute Vander and Jane are considered Plaintiff's "employer" for purposes of FLSA liability. However, the Court concludes Plaintiff cannot support a claim of liability against Stephen in his individual capacity under the FLSA.

### A. Stephen Oliveira's Liability

An "employer" under FLSA "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[2] The term "employer" is defined more broadly than in traditional common law applications to serve the remedial purposes of FLSA. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). Whether a particular set of facts gives rise to coverage under the FLSA is a matter of law. *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984). The Court must consider the "economic reality" of the employment relationship, rather than formalistic labels or "common law concepts of agency" when deciding whether a party is an employer under the Act. *Dole*, 942 F.2d at 965. In *Dole*, the court reasoned an individual officer must have "a significant ownership interest in the corporation, and [] control over significant aspects of the corporation's day-to-day functions, including compensation of employees," to hold them liable as an employer. *Id.* (internal citation omitted).

Here, Defendants Vander and Stephen strongly dispute Plaintiff's contention Stephen was a manager and insist he was solely a bartender at all times (Court File Nos. 22, 34). Plaintiff alleges

---

[2]Defendants do not challenge Plaintiff's allegation they are an enterprise engaged in commerce as defined by 29 U.S.C. § 203(r)(1) and (s)(1) with annual business volume exceeding $500,000.

Stephen was a member of management and "had front of house responsibility and could (and did) discipline and fire employees" (Court File No. 30-1, p.2). Plaintiff does not allege Stephen had any ownership or economic interest in the company other than the fact his parents were the owners. Stephen is not otherwise attributed with responsibility for compensation or determining salary issues. Even if Plaintiff's contentions are accepted as true and Stephen had a managerial role in some of the day-to-day operations, Stephen has no economic interest or authority to determine salary necessary to be held individually liable for the alleged FLSA violations. *See e.g., Cowan v. Treetop Enters., Inc.,* 120 F. Supp. 2d 672, 696-697 (M.D. Tenn. 1999).

Because the plaintiff fails to state a claim for relief against Stephen, the Court will **DENY** Plaintiff's motion for summary judgment on the FLSA claims against Stephen. Plaintiff similarly fails to allege facts to support a claim against Stpehen for wrongful termination or retaliation and the Court will **DENY** summary judgment on these claims as well.

The Court will **ORDER** Plaintiff to show cause **within ten (10) days** of entry of the Court's accompanying order why Stephen Oliveira should not be dismissed as a party.

### B. Minimum Wage/ Tip Credit

Plaintiff claims Defendants failed to pay Plaintiff minimum wage for all hours worked by their repeated failure to compensate "off-the clock" work and by inappropriately using the "tip credit." The FLSA requires employers to pay their employees a minimum wage for all work hours worked. 29 U.S.C. § 206(a)(1). Notwithstanding the minimum wage requirement, employers may pay less than the minimum wage to employees who "customarily and regularly receive tips." 29 U.S.C.§ 203(m). To qualify for this "tip credit," an employer must demonstrate: (1) the employee was notified of the provisions of subsection § 203(m); and (2) "all tips received by such employee

7

have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.*

### 1. "Off the Clock"

There is no dispute of fact Defendants Vander and Jane failed to compensate Plaintiff for all hours worked. Plaintiff states as a bartender, he often was required to begin working at 3:00 p.m. but not clock in until 5:00 p.m. and would also work 2-3 hours after clocking out at closing time (Court File No. 30-1, pp. 2-3). Defendants do not dispute these portions of Plaintiff's testimony nor do they deny these allegations in the complaint. Furthermore, Vander indicates Plaintiff agreed to "work for the tips after the 40 hours because he need[ed] to work so much" (Court File No. 22, p.1). This provides even greater support to Plaintiff's claims of working undocumented hours. Pursuant to 29 C.F.R. § 785.12, "[i]f the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked." Plaintiff was required to remain after hours to clean and complete his bartending shift and could not leave the restaurant until a member of management collected his money and unlocked the doors. Even if Plaintiff had agreed to work for tips only, this does not release Defendants from liability for compensating him at minimum wage for all hours worked. *See Burry v. Nat'l Trailer Convoy, Inc.*, 338 F.2d 422, 426 (6th Cir. 1964)("employer is obligated to pay not less than the minimum statutory wages for all hours that he knowingly suffers or permits an employee to work, notwithstanding any agreement to work fewer hours or to obtain authorization to work beyond a specified work period").

The Court therefore finds Plaintiff has established he worked hours for which he was not compensated as a matter of law.

### 2. Tip Credit

Throughout his employment, there is no dispute of fact Plaintiff was compensated at an hourly rate below the federally-mandated minimum wage outlined in 29 U.S.C. § 206(a)(1).[3] The FLSA allows employers to utilize a "tip credit" to pay employees less than minimum wage as long as the "amount on account of the tips received by such employee" combined with the employee's actual wage results in an hourly wage equal to that mandated by § 206(a)(1). 29 U.S.C. § 203 (m)(2). However, this statutory provision does not apply to any "tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by that employee." *Id.* This subsection does not prohibit the pooling of tips with employees who customarily and regularly receive tips, such as bartenders. Plaintiff may not have retained all of his tips, but factual disputes preclude the Court from deciding whether the defendants were in compliance with the tip pooling provision. Construing the facts in the light most favorable to the defendants, Plaintiff was not required to share tips with the dishwashers. To the extent Plaintiff may have been required to share his tips with Stephen, Defendants assert he was in the position of a bartender, which would be an appropriate employee for tip pooling. The Court need not base its decision on Plaintiff's disputed retention of tips because the defendants failed to comply with the notice provision.

Defendants are precluded from utilizing the "tip credit" because they undisputedly failed to comply with the notice provisions of § 203(m)(2). To satisfy the notice requirement, "an employer must inform the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation." *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1998).

---

[3] As noted above, whether Plaintiff received $3.50 per hour the entire time or initially received $2.13 an hour with a subsequent increase to $3.50 is not entirely clear.

In *Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98, 101 (E.D. Tenn. 1979), the court held vague conversations about minimum wage plus a single poster with "some or all of the relevant information" does not establish the notice requirement in § 203(m). Here, it is undisputed Defendants failed to comply with the notice requirement. Because Defendants have not satisfied the notice requirement, tips received by Plaintiff cannot be considered as part of his wages to satisfy Defendants' minimum wage obligations. *See Bonham*, 476 F. Supp. at 102.

Despite factual disputes surrounding whether or not tips were shared with dishwashers and whether or not Stephen was a manager, Defendants failed to comply with the notice provisions of § 203(m) and cannot utilize the tip credit to offset the lower wage paid to Plaintiff. The Court finds Defendants failed to compensate Plaintiff at minimum wage for all hours worked as a matter of law. Accordingly, summary judgment is appropriate for Plaintiff's minimum wage violation claims.

### C. Overtime

The FLSA "requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 764 (6th Cir. 2006) (citing 29 U.S.C. § 207(a)(1)).[4] The employee must prove he "performed work for which he was not properly compensated." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). This burden is somewhat relaxed "if the employer kept inaccurate or inadequate records." *Id.* Plaintiff is entitled to summary judgment on his overtime violation claim. Plaintiff undisputedly worked in excess of 40 hours per week on multiple occasion and Defendants do not dispute Plaintiff was compensated

---

[4]There are exceptions to the requirement, none of which have been raised in this case.

at the same hourly rate. Documents submitted by Vander actually support Plaintiff's claim. In support of his motion to set aside default judgment, Vander submitted Plaintiff's payroll records reflecting all hours as "Regular Hours" and not "Overtime Hours" despite weeks of more than 50 hours, clearly in excess of a 40 hour work week (Court File No. 15-2). Also, in Vander's motion to set aside default judgment, he claims Plaintiff agreed to work for tips after he had reached 40 hours in a week (Court File No. 22, p. 1).

The Court concludes no reasonable juror could find for the defendants, therefore, Plaintiff is entitled to summary judgment on his overtime violation claim.

### D. Retaliation

The FLSA protects employees against retaliation for filing "any complaint." 29 U.S.C. § 215(a)(3). Such protection is also afforded under the common law of this state and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304. Lodging a complaint against an employer is among the activities protected by FLSA. *McDaniel v. Transcender, LLC*, 119 F. App'x 774, 779 (6th Cir. 2005); *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004). To establish a cause of action under TPPA, Plaintiff must show (1) his status as an employee of the defendants; (2) his refusal to participate in, or remain silent about, illegal activities; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination. *Southmayd v. Apria Healthcare, Inc.*, 412 F. Supp.2d 848, 862 (E.D. Tenn. 2006); Griggs v. Coca-Cola Employees' Credit Union, 909 F. Supp. 1066, 1069 (E.D. Tenn. 1995). A plaintiff also can claim damages under common-law retaliatory discharge when "a motivating factor for the discharge violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision." *Guy*, 79 S.W.3d at 535 (citing *Chism v. Mid-*

*South Milling Co.*, 762 S.W.2d 552, 555 (Tenn. 1988))

Plaintiff claims he was terminated in retaliation for opposing the illegal activity of, and refusing to participate in, sharing his tips with Stephen, a member of management. Issues of material fact preclude summary judgment on Plaintiff's retaliation claims under the FLSA, common law, and TPPA. Construing the facts most favorably to the defendants, Stephen was a bartender and not a member of management. Thus, Plaintiff's refusal to share tips with a fellow bartender would not necessarily establish Plaintiff's refusal to participate in an illegal activity under FLSA. More importantly, Vander disputes Plaintiff was ever even fired. A necessary element of both TPPA and common-law retaliatory discharge is Plaintiff's termination.

Because there are genuine issues of material fact as to the circumstances surrounding the end of Plaintiff's employment, summary judgment is inappropriate. The Court will therefore deny Plaintiff's motion for summary judgment on his wrongful termination and retaliation claims.

## IV. DAMAGES

Plaintiff submitted his own declaration and a "Declaration of Charles P. Yezbak, III" in support of his motion for summary judgment to establish the amount of damages (Court File Nos. 30-1; 30-2). Plaintiff argues the decision in *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir. 1999), establishes he is entitled to damages based on his testimony alone even if it is based on estimates. The Court disagrees. Where an "employer's records are inaccurate or inadequate," a burden shift is appropriate if Plaintiff "proves he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens*

*Pottery Co.*, 328 U.S. 680, 687-87 (1946).  The burden would then "shift to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*; *Herman*, 183 F.3d at 472.  Only if the employer "fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.*

Here, Plaintiff has established he performed work without proper compensation, but has failed to produce sufficient evidence to show the amount and extent of work performed. Vander has submitted some payroll records reflecting much less overtime than Plaintiff claims he worked (Court File No. 15-2)[5] and completely disputes the $50 per week Plaintiff claims to have "tipped out" to dishwashers.  The Court finds there is insufficient evidence in the record to award damages and will reserve ruling on damages until the remainder of Plaintiff's claims have been adjudicated. Because of the unusual procedural history of this case, the parties have yet to have a scheduling conference and there has been very little, if any discovery.  Reserving ruling on damages affords the parties an opportunity to supplement the record to better establish the amount and extent of work performed.

## V.     CONCLUSION

For the above stated reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's motion for summary judgment. The Court will deny summary judgment on Plaintiff's claims against Stephen Oliveira and for wrongful termination and retaliation against the remaining

---

[5] For example, Plaintiff estimates working approximately 80-90 hours per week from June through August 2007, but the greatest number of hours worked in a week in August was 53.78 as reflected in the defendants' payroll records (Court File No. 15-2, p. 2).  Even factoring in Defendants' failure to compensate for all hours worked, this discrepancy is significant and negates the reasonableness of Plaintiff's estimate.

13

defendants. The Court will grant the remainder of Plaintiff's motion, concluding Defendants Vander and Jane Olivira violated the minimum wage and overtime provisions of the FLSA as a matter of law. The Court will **RESERVE RULING** on the issue of damages until Plaintiff's remaining claims are adjudicated.

Finally, the Court finds Plaintiff fails to state a claim against Stephen Oliveira and will order the Plaintiff to show cause **within ten (10) days** of entry of the Court's accompanying order why Stephen Oliveira should not be dismissed as a party.

**An Order shall enter.**

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**